**2023 IL 127670**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127670)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
JASON CONWAY, Appellee.

*Opinion filed May 18, 2023.*

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Holder White, Rochford, and O'Brien concurred in the judgment and opinion.

Justice Neville took no part in the decision.

**OPINION**

¶ 1       The defendant, Jason Conway, was found guilty of being an armed habitual criminal (720 ILCS 5/24-1.7 (West 2014)) following a bench trial in the circuit court of Cook County. On appeal, Conway challenged, *inter alia*, the sufficiency of the evidence and the identification testimony of a police officer. The appellate

court found that the evidence was sufficient to convict Conway but nonetheless reversed and remanded for a new trial due to the trial court's pronounced bias in favor of police testimony. 2021 IL App (1st) 172090. For the following reasons, we affirm the judgment of the appellate court in part, reverse the judgment in part, and remand the cause to that court for further proceedings.

¶ 2                                    BACKGROUND

¶ 3        Conway was charged with being an armed habitual criminal following a shooting incident that occurred in Chicago on November 2, 2015. At Conway's bench trial, Chicago police officer Donald Story testified that on November 2, 2015, at approximately 11:45 a.m., he was working as a surveillance officer with a narcotics team. Officer Story had just parked his unmarked police vehicle at the corner of South Hamlin Boulevard and West Monroe Street when he suddenly heard about seven gunshots. He looked to his right and saw someone "firing a handgun at a moving vehicle." In court, he identified Conway as the shooter. Officer Story testified that he was "approximately maybe 150 feet" away from Conway during the shooting and that he could see Conway's "front and his side" in the "daylight." Conway was wearing a blue hoodie.

¶ 4        The vehicle at which Conway had been shooting sped off. Officer Story testified he next saw Conway approach a parked vehicle, open the door, and reach inside. Conway then walked away from the parked vehicle and entered a house on West Monroe Street.

¶ 5        Officer Story called for backup. When it arrived, several police officers entered the house on West Monroe Street. Officer Story testified that, upon entering the house, he saw several men and women inside. He also saw Conway sitting on the floor with the blue hoodie lying at his feet. Officer Story identified Conway as the shooter, and he was detained. During a subsequent pat down, police officers found car keys on Conway that fit the parked vehicle that Officer Story had seen Conway reach into right after the shooting.

¶ 6        Officer Story further testified that he searched the house and found two handguns hidden inside a purse underneath a mattress. One of the handguns was a

.40-caliber handgun that looked like the same firearm Officer Story had seen Conway use during the shooting.

¶ 7      An evidence technician in the forensic firearms lab of the Chicago Police Department testified that the cartridge cases recovered from the scene of the shooting were fired from the .40-caliber handgun discovered underneath the mattress. A forensic scientist with the Illinois State Police also testified that gunshot residue was found on the blue hoodie but not on Conway's hands.

¶ 8      Following closing arguments, the trial court stated that, because the firearm used in the shooting was discovered inside the house the shooter ran into and because gunshot residue was found on the blue hoodie, the case "boil[ed] down to an ID," specifically, Officer Story's identification of Conway as the shooter in the blue hoodie. In evaluating Officer Story's identification, the trial court noted that it was broad daylight when the shooting occurred and there were no obstructions in Officer Story's line of view of the shooter. The trial court continued:

> "It is also clear that the officer being in a covert situation was sitting nearby. It was about 150 feet away. Obviously 150 feet is 50 yards, half of a football field.
>
> The officer, who is a trained police officer, is not a civilian, testified that he was in a position to immediately react when the shots were fired and saw the shots being fired, the shooter moving towards the street, firing and also after seven gunshots, apparently lean in and lean out of a Pontiac. So it's not just the several seconds that boom, boom of the gun where the offender then flees into the house.
>
>                                           * * *
>
> I do find that the officer did have a unique opportunity to view the shooter in this matter. I do find that the officer's testimony with regard to the identity of the shooter was in fact clear, credible, and convincing.
>
> I do find that the officer was not startled, he was not in a situation where his perception might have been affected or that he might have been distracted. Again, he is a professional. He is a law enforcement official, which I think is something that I can take into consideration as compared to an individual who's

never had any such training and the dangers of false identification become more concerning [than] with a police officer. That is not a general statement. That is specifically to this officer. I believe his testimony is clear, credible, and convincing with regard to this.

The guns inside the place, the shooter went inside the place, the identity of this defendant I believe has been established beyond a reasonable doubt."

¶ 9   The trial court then found Conway guilty of being an armed habitual criminal and sentenced him to 14 years' imprisonment.

¶ 10   Conway appealed and made the following arguments: (1) the evidence was insufficient to prove his guilt beyond a reasonable doubt, (2) the trial court erred in finding that Officer Story's training made him less likely to make a misidentification because it was not supported by any evidence that he had received such training, (3) testimony from a forensic scientist regarding the results of the gunshot residue tests violated the confrontation clause of the United States Constitution, and (4) his *pro se* allegations of ineffective assistance of counsel entitled him to further proceedings.

¶ 11   The appellate court found that the evidence, although "closely balanced," was nonetheless sufficient to find Conway guilty beyond a reasonable doubt. 2021 IL App (1st) 172090, ¶ 20. However, the appellate court reversed and remanded the case to the trial court for a new trial with a different judge because of "the trial judge's pronounced bias in favor of police testimony." *Id.* ¶ 31. The appellate court focused on the trial court's finding that Officer Story's training as a police officer "gave him a better ability than any other witness to identify a face he saw for a few seconds from 150 feet away." *Id.* ¶ 26. More specifically, the appellate court held that the trial court found Officer Story more credible "solely because of his status as a police officer" (*id.*), and it therefore demonstrated a "pronounced bias in favor of police testimony" (*id.* ¶ 29). Because the appellate court reversed and remanded the case on those grounds, it did not address the other issues raised by Conway in his appeal. *Id.*

¶ 12   Justice Pierce dissented, stating that, while he agreed the evidence was sufficient to convict Conway, he disagreed with the majority's finding that the trial court showed a bias in favor of police testimony. *Id.* ¶ 35 (Pierce, J., dissenting).

Justice Pierce asserted that the trial court's comments about Officer Story's training related to its finding that "Officer Story was paying attention," which was "a factor that is entirely appropriate to consider when evaluating identification testimony." *Id.* ¶ 42. Justice Pierce further explained:

> "The circuit court did not find that Officer Story is better at observing events than a civilian because he is a police officer or that a civilian would be unable to make the same observations. The circuit court credited Officer Story's testimony because he observed the shooting while it was happening and testified as to what he saw. The circuit court considered Officer Story's testimony that he saw [Conway's] face from the front and left side during the shooting and found that testimony—along with the remainder of Officer Story's identification testimony—to be 'clear, credible, and convincing.' " *Id.*

¶ 13    This court granted the State's petition to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2020). Conway has also requested cross-relief from this court regarding the appellate court's finding that the evidence was sufficient to convict him. Ill. S. Ct. R. 343(b)(1) (eff. July 1, 2008). We allowed the Innocence Project leave to file an *amicus curiae* brief in support of Conway's position with respect to eyewitness identifications. Ill. S. Ct. R. 345(a) (eff. Sept. 20, 2010).

¶ 14                                    ANALYSIS

¶ 15    We begin with Conway's request for cross-relief regarding the sufficiency of the evidence. Conway argues that Officer Story's identification of him as the shooter is insufficient on its own to find him guilty and that the circumstantial evidence was not "significant enough to allow a trier of fact to rationally conclude that there was no reasonable doubt that Conway was the shooter," especially since there were multiple people inside the house where the gun was found and no gunshot residue was discovered on his hands. He accordingly asks us to reverse the appellate court's judgment finding the evidence sufficient to convict him of being an armed habitual criminal.

¶ 16    In reviewing a challenge to the sufficiency of the evidence, this court asks whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense

beyond a reasonable doubt. *People v. Jones*, 2023 IL 127810, ¶ 28. It is not this court's function to retry the defendant, and we will not substitute our judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses. *Id.* A criminal conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Id.*

¶ 17 A person commits the offense of being an armed habitual criminal, in pertinent part, when "he *** possesses *** any firearm after having been convicted a total of 2 or more times" of certain enumerated offenses. See 720 ILCS 5/24-1.7(a) (West 2014). Conway's previous two convictions are not in dispute and therefore not at issue. Rather, our analysis focuses on whether he possessed a firearm, *i.e.*, whether the evidence was sufficient to establish that he was the shooter in this case.

¶ 18 Looking at all the evidence in favor of the State, as we must, we cannot say it was unreasonable for the trial court to find that Conway was the shooter and therefore possessed a firearm. Officer Story identified Conway as the shooter, whom he could see clearly in broad daylight while on surveillance. It is well established that a single, positive identification by someone who had ample opportunity to observe the offender is sufficient to support a conviction. *People v. Piatkowski*, 225 Ill. 2d 551, 566 (2007). We see no reason to disagree with the trial court's finding that Officer Story's in-court identification of Conway as the shooter was credible, especially considering he testified that he was focused on the shooter with no obstructions in his line of sight. See *People v. Slim*, 127 Ill. 2d 302, 307 (1989) (a single witness's identification of the accused is sufficient to sustain a conviction, provided that the witness had an adequate opportunity to view the accused and that the in-court identification is positive and credible).

¶ 19 Conway makes much of the fact that Officer Story was approximately 150 feet away from the shooter and argues that, from that distance, he was prevented from "discern[ing] the distinct facial features necessary to identify another person." As already noted, though, Officer Story's testimony that he could see the shooter clearly was found to be credible, even from a distance. We are not prepared to say, as a matter of law, that it is impossible to make an identification from 150 feet away.

- 6 -

¶ 20        Nevertheless, even without Officer Story's identification of Conway, the remaining circumstantial evidence is sufficient to find that he was the shooter and, therefore, guilty beyond a reasonable doubt. See *People v. Jackson*, 2020 IL 124112, ¶ 64 (circumstantial evidence is sufficient to sustain a criminal conviction). In this case, Officer Story saw the shooter wear a blue hoodie, reach into a parked vehicle, and then go inside a house. Conway was found inside that house, with a blue hoodie at his feet that had gun residue on it and with keys to the parked vehicle that the shooter had reached into. Under these facts and circumstances, it was reasonable for the trial court to find that Conway was the shooter and therefore possessed a firearm. See *People v. Galarza*, 2023 IL 127678, ¶ 25 (it is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts).

¶ 21        This remains true even though no gunshot residue was found on Conway's hands, as the trial court could have reasonably inferred that he washed his hands after entering the house. Indeed, "[a]ll reasonable inferences are drawn in favor of a finding of guilt." *People v. Swenson*, 2020 IL 124688, ¶ 35. We therefore affirm the appellate court's judgment finding the evidence sufficient to convict Conway of being an armed habitual criminal.

¶ 22        We now turn to the State's appeal, which challenges the appellate court's decision to remand this case for a new trial because of the trial court's pronounced bias in favor of police testimony. Trial judges are presumed to be impartial, as it is assumed that judges will be able to set aside any biases or predispositions they might have. *People v. Jackson*, 205 Ill. 2d 247, 276 (2001). "To conclude that a judge is disqualified because of prejudice is not, of course, a judgment to be lightly made." *People v. Vance*, 76 Ill. 2d 171, 179 (1979). It has been established by this court that only the most extreme circumstances warrant disqualifying a trial judge due to judicial bias. *Jackson*, 205 Ill. 2d at 276.

¶ 23        Keeping those principles in mind, we find that it was error for the appellate court to hold that the trial court's comments were so extreme as to demonstrate a judicial bias in favor of police testimony. Allegations of judicial bias or prejudice require viewing the comments at issue in context. *People v. Urdiales*, 225 Ill. 2d 354, 426 (2007). And viewing the trial court's comments in context here clearly

shows that the court was commenting on the *credibility* of Officer Story's testimony. This is a stark distinction from showing bias.

¶ 24    As the dissenting justice in the appellate court pointed out, the trial court observed that Officer Story is a police officer who was on a surveillance operation. Because of this, he was in a position to be alert and focus on the shooting when it happened, and so he had heightened attention on the situation and the shooter. The trial court simply expressed its discretion to take that heightened attention into consideration when determining the reliability of Officer Story's identification of Conway as the shooter. It is well settled that the witness's degree of attention is one of the circumstances to be considered in determining the reliability of an eyewitness identification. *Slim*, 127 Ill. 2d at 308. It was therefore proper for the trial court to consider how closely Officer Story was paying attention to the shooter, which included noting that Officer Story was on a surveillance assignment when the shooting occurred. See *Manson v. Brathwaite*, 432 U.S. 98, 115 (1977) (noting that police officers can be "expected to pay scrupulous attention to detail" as eyewitnesses). The trial court's determination that Officer Story's *particular* eyewitness identification is credible is not the same as considering *all* police officers to be better eyewitnesses. Notably, the trial court explicitly said that its comments were "not a general statement" and were specifically related to Officer Story and the particular circumstances in this case under which he saw the shooter.

¶ 25    Just as the trial court noted that Officer Story had a good opportunity to view the shooter because it was broad daylight with no obstructions in his line of sight, it also noted that Officer Story was focused on the shooter's face due to his circumstances, *i.e.*, observing a shooting while on surveillance. These were appropriate factors for the trial court to consider. See *Piatkowski*, 225 Ill. 2d at 567 (it is a well-settled principle that there are five factors that should be considered in determining the reliability of identification evidence, including the opportunity of the witness to view the offender at the time of the crime and the witness's degree of attention). Simply put, the trial court's comments reflected a deliberation of the proper factors in its credibility determination.

¶ 26    And that deliberation was not a pronouncement of a pro-police bias. This court has previously relied upon the United States Supreme Court's description of bias to recognize that: " '[O]pinions formed by the judge on the basis of facts introduced

*** do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.' " *Eychaner v. Gross*, 202 Ill. 2d 228, 281 (2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). As we have found that the trial court's comments regarding Officer Story's training related to the court's credibility determination and as nothing else in the record indicates that the trial court displayed a favoritism for police testimony, the appellate court erred in holding that the trial court had a pronounced pro-police bias.

¶ 27 Accordingly, we reverse the appellate court's judgment reversing the case on the grounds of the trial court demonstrating a judicial bias in favor of police testimony. We further remand this matter to the appellate court for consideration of the remaining issues raised by Conway that were not previously reviewed by that court.

¶ 28 CONCLUSION

¶ 29 For the foregoing reasons, we affirm the appellate court's judgment holding the evidence was sufficient to convict and reverse the appellate court's judgment remanding for a new trial due to the trial court showing a bias in favor of police testimony. The cause is remanded to the appellate court to address Conway's remaining claims.

¶ 30 Appellate court judgment affirmed in part and reversed in part.

¶ 31 Cause remanded.

¶ 32 JUSTICE NEVILLE took no part in the consideration or decision of this case.