**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230164-U

Order filed February 2, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0164 Circuit No. 22-DV-506 |
| ALEXANDER J. DELULIO II, | ) ) ) | Honorable Christine T. Cody, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Peterson and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The evidence presented at trial was sufficient to prove defendant's guilt beyond a reasonable doubt.

¶ 2     Defendant, Alexander J. Delulio II, appeals his conviction for domestic battery arguing the State's evidence was insufficient to sustain his conviction. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged by superseding information with four counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2022)), as follows: defendant (count I) caused bodily harm to E.D. by grabbing E.D. about the neck, (count II) made contact of an insulting or provoking nature by grabbing E.D. about the neck, (count III) caused bodily harm by grabbing E.D. about the shoulders, and (count IV) made contact of an insulting or provoking nature by grabbing E.D. about the shoulders. The charges stemmed from an incident that occurred on April 29, 2022, between defendant and his 16-year-old son, E.D.

¶ 5        At a jury trial,[1] E.D testified that on the night of the incident, defendant picked up E.D. and his 12-year-old sister, K.D., from their mother's house for the weekend. After picking the children up, defendant stopped at a grocery store. K.D. did not want to enter the store, and E.D. stated that he felt it was unsafe to leave K.D. alone, so he decided to stay in the car with her. Defendant exited the car, opened the passenger side door, and told E.D. to get out. After E.D. refused to comply multiple times, defendant tried to pull him out of the car by grabbing his arms and shoulders. E.D. stated that it did not hurt when defendant grabbed his shoulders. Defendant also grabbed him by the hood of his sweatshirt, choking him. E.D. stated that defendant was on top of him and pulling the hood against his neck for approximately 7 to 10 seconds. E.D. testified that he was not able to breathe, and "it hurt very bad." E.D. stated that he felt scared and was afraid that if he got hurt, K.D. was going to be hurt too. After defendant stopped and stepped away, E.D. noticed that his sweatshirt had been ripped down the front and he had a red "scar" on his neck. The State introduced photographs of E.D. taken after the incident showing both the "scar" and the ripped sweatshirt.

---

[1]A six-person jury was impaneled at defendant's request.

¶ 6    E.D. testified that after the altercation ended, he exited the car and went to a nearby gas station with K.D. E.D. stated he called his mother using his cell phone, and she called the police. When asked if he hit or kicked defendant, E.D. asserted he did not but agreed on cross-examination that he pushed and resisted defendant when he tried to pull him out of the car. On redirect, E.D. confirmed that K.D. had recorded the physical altercation in its entirety on her cell phone.

¶ 7    The cell phone recording was admitted as evidence. The video, which is approximately 41 seconds in length, showed defendant attempting to reach into the car through the open passenger side door. E.D. appeared to push and kick back at defendant. Defendant then leaned into the car, grabbed E.D. by the shoulders, and wrapped his arms around E.D.'s neck and shoulders. At one point, defendant can be seen pulling up on the hood of E.D.'s sweatshirt. Throughout the video, E.D. can be heard telling defendant numerous times to get off him. K.D. also repeatedly screamed at defendant to get off E.D. Toward the end of the video, E.D. can be heard telling defendant that he cannot breathe.

¶ 8    K.D. testified that defendant parked the car and entered the store. Defendant returned to the car and told E.D. to get out and set a good example for K.D. After a brief exchange, defendant grabbed E.D.'s shoulders and the hood of his sweatshirt. Defendant pulled the hood, scratching E.D.'s neck. K.D. stated that E.D. had not hit defendant before she began recording with her cell phone. After E.D. and K.D. exited the vehicle, they called their mother, and she instructed them to walk to the nearest gas station. K.D. stated that the gas station was closed, so they went to the side of the building until police arrived. On cross-examination, K.D. stated that she could not remember if defendant was calm when he asked E.D. to get out of the car but confirmed that he was not yelling or screaming. On redirect, K.D. testified that there was no physical altercation prior to

when she began recording. On recross examination, K.D. stated that E.D. did not try to push defendant when defendant started pulling on his shoulder to get him out of the car.

¶ 9        Village of Bloomingdale Police Officer Isaiah Reyes testified that he responded to the incident. Reyes stated he observed a small, two-to-three-inch laceration on the center of E.D.'s neck and that E.D.'s sweatshirt was ripped from the neck down to E.D.'s sternum. Reyes described E.D.'s demeanor as upset and distressed. On cross-examination, Reyes stated that according to E.D.'s identification card, he was six feet, four inches in height and weighed 245 pounds.

¶ 10       At the close of the State's case, defense counsel moved for a directed verdict. Defense counsel initially did not present any argument, and the court denied the motion. After a lunch recess, defense counsel requested argument on the motion. The court heard arguments and granted the motion as to count III, finding that defendant did not cause bodily harm by grabbing E.D.'s shoulder based on E.D.'s testimony that it did not hurt. The court denied the motion as to the remaining counts.

¶ 11       Defendant testified that he was divorced from E.D. and K.D.'s mother, and on the date of the incident he was picking up the children for his weekend visitation. After arriving at the grocery store, defendant returned to his car when he realized the children had not followed him into the store. Defendant explained that for safety reasons, he did not want to leave the children in the car alone because it was late in the evening. Defendant opened the passenger side door of the car and asked E.D. multiple times to get out, but E.D. refused. Defendant stated that he needed to follow through with disciplining E.D. for being disobedient because he did not want E.D. to "be[ ] left with the idea that he could do whatever he wants, whenever he wants." Defendant put his hand on E.D.'s shoulder and told him again to get out. E.D. started kicking and pushing at defendant. Defendant testified that he continued to remove E.D. from the car. Defendant stated he was calm

4

during the incident. He felt the force he used was necessary, and he did not intend to hurt E.D. Defendant denied intentionally pulling on E.D.'s sweatshirt or trying to choke E.D. using his hands or the strings from the hood on E.D.'s sweatshirt.

¶ 12　　　　At the close of trial, the jury was given the following instruction on defendant's affirmative defense: "A parent is legally justified in using reasonable force when necessary as part of reasonable discipline of a child." The jury found defendant not guilty of counts I and II, but guilty of count IV. The court denied defendant's motion for new trial and sentenced him to one year of conditional discharge.

¶ 13　　　　　　　　　　　　　　　II. ANALYSIS

¶ 14　　　　On appeal, defendant argues that the evidence at trial was insufficient to find him guilty beyond a reasonable doubt of domestic battery. Challenges to the sufficiency of the evidence require the reviewing court to view the evidence in the light most favorable to the prosecution and determine whether " ' "*any* rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." ' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "It is not this court's function to retry the defendant, and we will not substitute our judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses." *People v. Conway*, 2023 IL 127670, ¶ 16. A reversal is not warranted unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *Collins*, 106 Ill. 2d at 261.

¶ 15　　　　For defendant to be convicted of domestic battery under count IV, the State had to prove that defendant knowingly made physical contact of an insulting or provoking nature with a family or household member without legal justification. See 720 ILCS 5/12-3.2(a)(2) (West 2022).

Defendant does not allege that the State failed to prove the elements of the offense. Instead, defendant solely contends the evidence was insufficient to disprove his affirmative defense that he was entitled to exercise reasonable parental discipline. Stated another way, defendant solely argues that the State failed to prove that defendant's exercise of parental discipline was not reasonable under the circumstances. "Such an affirmative defense, like self-defense, provides a legal justification for an otherwise criminal act in order to balance a parent's right to privacy in raising their children with the State's interest in preventing the mistreatment of children." *People v. Parrott*, 2017 IL App (3d) 150545, ¶ 23. As defendant raised the affirmative defense of parental discipline at trial, the State had the burden of showing that the discipline exercised by defendant exceeded the standards of reasonableness, in addition to proving the elements of the charged offense. See *id.* ¶ 24.

¶ 16 Both the necessity for and the reasonableness of a punishment is a determination for the finder of fact based on the circumstances of each case. *People v. Green*, 2011 IL App (2d) 091123, ¶ 24. To determine whether an act of corporal punishment was reasonable, the factors appropriate for the court to consider include the degree of injury inflicted upon the child, the likelihood of future punishment that may be more injurious, the psychological effects on the child, and whether the parent was calmly attempting to discipline the child or was lashing out in anger. *Parrott*, 2017 IL App (3d) 150545, ¶ 25. Some factors may not be applicable depending on the circumstances of each case, and the court is not required to expressly consider each factor when determining reasonableness. *Id.* ¶ 28.

¶ 17 Here, the evidence presented was sufficient to disprove the affirmative defense of reasonable parental discipline. In the video presented at trial, defendant first grabbed E.D. by the shoulders and then leaned into the vehicle on top of E.D., wrapping his arms around E.D.'s neck

6

and shoulders. Although defendant did not appear to be lashing out in anger while attempting to remove E.D. from the car, he grabbed E.D. with enough force to pull at and rip E.D.'s sweatshirt. E.D. testified that he could not breathe while defendant was on top of him and pulling his sweatshirt. Additionally, E.D. sustained a laceration and stated he was scared during the altercation. The jury found E.D.'s testimony to be credible. In viewing the evidence in the light most favorable to the State, a rational trier of fact could have concluded that defendant's actions exceeded the bounds of reasonable parental discipline based on the circumstances.

¶ 18                                                  III. CONCLUSION

¶ 19          The judgment of the circuit court of Du Page County is affirmed.

¶ 20          Affirmed.