**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220363-U

Order filed May 3, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-22-0363 |
| v. | ) ) | Circuit No. 21-CM-1361 |
| RAYMOND MENDOZA, | ) ) ) | Honorable Robert A. Miller, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Presiding Justice McDade and Justice Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*: The evidence presented was sufficient to establish defendant's scooter was a motor vehicle.

¶ 2      Defendant, Raymond Mendoza, was convicted of two traffic violations. On appeal, defendant argues he was not proven guilty beyond a reasonable doubt because the State's evidence failed to demonstrate that the scooter he was operating was a motor vehicle. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Defendant was charged by complaint with crossing the designated median (625 ILCS 5/11-708(d) (West 2020)) and improper lighting -- head or tail lamps (*id.* § 12-201(b)) in violation of the Illinois Vehicle Code (Code) (*id.* § 1-100 *et seq.*). The State alleged that defendant was operating a motor vehicle, identified as an electric kick scooter, while committing the offenses. Defendant was also charged with obstructing identification (720 ILCS 5/31-4.5(a) (West 2020)) and driving while his license was revoked (625 ILCS 5/6-303(a) (West 2020)).

¶ 5    At a bench trial, Woodridge Police Sergeant Daniel Murray testified that on September 28, 2021, at approximately 3:48 a.m., he observed defendant cross the center median of a four-lane public highway while riding on a self-propelled, battery-powered electric kick scooter. Murray described the scooter as having a bright forward-facing headlight and a platform for the rider to stand. After passing defendant in his squad car, Murray observed through his rearview mirror that defendant had turned off the scooter's headlight and was travelling northbound in the southbound traffic lane. As a result of his observations, Murray initiated a traffic stop and advised defendant he was being detained. Despite Murray's repeated requests, defendant refused to identify himself and was eventually placed under arrest. Murray searched defendant incident to arrest and recovered a wallet containing defendant's state identification card. Murray then discovered defendant's driver's license was revoked.

¶ 6    In addition to Murray's testimony, the State introduced police body camera footage of the traffic stop and defendant's driving abstract showing that his license was revoked. Defendant's scooter was also entered into evidence. At the close of the State's case, the court granted defendant's motion for a directed verdict on the obstructing identification charge. The court declined to rule on the remaining three counts and took the matter under advisement as to whether the scooter was a motor vehicle.

¶ 7    When the court reconvened several days later, the State argued that defendant's scooter qualified as a motor vehicle, in part, because there was a 16-digit number listed on the scooter's label. The State asserted the number appeared to be an identification number. Defense counsel countered that no evidence or witness testimony had been presented regarding the number on the scooter's label and asserted that the scooter fell under the low-speed electric bicycle exception to the definition of motor vehicle under the Code. The court, relying on its own research, reasoned that the scooter could have been titled and registered under the Illinois Secretary of State rules if the scooter was labeled with a federal safety certification label and a vehicle identification number. The court found that there was a federal number on the scooter and based on its use by defendant on the roadway, the scooter qualified as a motor vehicle.

¶ 8    The court entered guilty verdicts for crossing the designated median and improper lighting. However, the court found defendant not guilty of driving while his license was revoked and acknowledged that the acquittal was inconsistent with the other verdicts based upon the finding that defendant was operating a motor vehicle. The court reasoned that it would not be in the interest of justice to convict defendant because he was likely operating the scooter instead of an automobile to avoid violations for driving without a valid license. Defendant was sentenced to one year of court supervision for crossing a designated median and one year of conditional discharge for improper lighting.

¶ 9                                    II. ANALYSIS

¶ 10    On appeal, defendant argues he was not proven guilty beyond a reasonable doubt because the evidence was insufficient to determine that the electric kick scooter he was operating was a motor vehicle. Specifically, defendant contends the State failed to demonstrate that the scooter

did not qualify as a low-speed electric bicycle. Defendant does not challenge the sufficiency of the evidence as to any other elements of the offenses.

¶ 11 Where a defendant challenges the sufficiency of the evidence, the reviewing court must view the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Conway*, 2023 IL 127670, ¶ 16. "A criminal conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.*

¶ 12 At the onset, we observe that the offense of crossing a designated median applies to all vehicles. 625 ILCS 5/11-708(d) (West 2020). The Code defines a "vehicle," in pertinent part, as "[e]very device, in, upon or by which any person or property is or may be transported or drawn upon a highway ***." *Id.* § 1-217. There is no dispute that defendant's scooter is a "vehicle" as defined by the Code. Therefore, whether the evidence presented at trial was sufficient to prove that defendant's scooter met the statutory definition of a "motor vehicle" has no bearing on his conviction for crossing a designated median.

¶ 13 Conversely, to sustain a conviction for improper lighting under section 12-201(b) of the Code, the State was required to prove that the vehicle defendant was operating qualified as a "motor vehicle." *Id.* § 12-201(b). Under the Code, a "motor vehicle" is defined as "[e]very vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, except for vehicles moved solely by human power, motorized wheelchairs, low-speed electric bicycles, and low-speed gas bicycles." *Id.* § 1-146. Further, section 1-140.10 of the Code defines a low-speed electric bicycle as, "[a]

4

bicycle with fully operable pedals and an electric motor of less than 750 watts ***." *Id.* § 1-140.10.

¶ 14    Here, the State presented sufficient evidence to demonstrate defendant's scooter was a motor vehicle. Defendant's scooter was entered into evidence, was viewable on the police body camera footage, and Murray testified that it was a self-propelled electric kick scooter. Despite defendant's assertion that the scooter falls under the low-speed electric bicycle exception to the statutory definition of motor vehicle, the plain language of section 1-140.10 dictates that only bicycles with fully operable pedals can be defined as a low-speed electric bicycle for the purposes of that exception. See *id.*; *People v. McClure*, 218 Ill. 2d 375, 382 (2006) ("When possible, the court should interpret the language of a statute according to its plain and ordinary meaning. *** A court should not depart from the language of the statute by reading into it exceptions *** that conflict with the intent of the legislature.").

¶ 15    The evidence clearly established that defendant was operating a scooter, not a bicycle. Defendant does not even contend that he was operating a bicycle with fully operable pedals. In viewing the evidence presented in the light most favorable to the State, the court could have reasonably concluded that defendant's scooter was a motor vehicle and that the exception for low-speed electric bicycles did not apply based solely on the plain language of the statutory definitions. See *People v. Frazier*, 2016 IL App (1st) 140911, ¶ 15 (finding a motor scooter was not a bicycle under the statutory exception to the definition of motor vehicle, in part, based on witness testimony describing the vehicle as a "motor scooter" and not a bicycle). Accordingly, we affirm defendant's conviction for improper lighting.

¶ 16    In coming to this conclusion, we find defendant's assertion that section 12-201(b) cannot apply to his scooter because it is equipped with only one headlamp unpersuasive. Defendant's

5

contention relies on a portion of the section's first sentence stating that all motor vehicles other than motorcycles shall exhibit at least two lighted headlamps. See 625 ILCS 5/12-201(b) (West 2020). However, it is evident from its title that the purpose of section 12-201 is to establish *when* lighted lamps are required while operating a motorcycle or motor vehicle on any highway (*id.* § 12-201), not the number of lighted headlights. The entirety of the first sentence of section 12-201(b) states:

> "(b) All other motor vehicles shall exhibit at least 2 lighted head lamps, with at least one on each side of the front of the vehicle, which satisfy United States Department of Transportation requirements, showing white lights, including that emitted by high intensity discharge (HID) lamps, or lights of a yellow or amber tint, *during the period from sunset to sunrise, at times when rain, snow, fog, or other atmospheric conditions require the use of windshield wipers, and at any other times when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of 1000 feet.*" (Emphasis added.) *Id.* § 12-201(b).

Notably, the number of driving lamps required for motor vehicles is prescribed in a separate section of the Code (*id.* § 12-211), which defendant was not charged with violating.

¶ 17    Here, the complaint regarding the improper lighting charge alleged defendant operated the electric kick scooter without the headlamp activated at approximately 3:48 a.m., a time during the period from sunset to sunrise. It is clear that defendant was charged with violating the substantive portion of the statute for turning off the headlamp on his vehicle during a time when lighting was required, not because his scooter was equipped with only one headlamp instead of

6

two. Although we acknowledge that a scooter, like the one operated by defendant, is manufactured with only a single headlamp, making it more akin to a motorcycle exhibiting at least one lighted lamp under section 12-201(a), the definition of a "motorcycle" under the Code excludes motor vehicles that do not have a seat or saddle. *Id.* §§ 12-201(a), 1-147. As defendant's scooter has a platform rather than a seat or saddle, it cannot be classified as a motorcycle. Until the legislature creates a specific designation for electric kick scooters similar to defendant's, we conclude that scooters qualifying as motor vehicles under the Code are subject to the circumstances when lighting is required as delineated in section 12-201(b).

¶ 18 Finally, we note that defendant's emphasis on the court's inconsistent verdicts is irrelevant, as his convictions cannot be challenged on the basis that they are inconsistent with an acquittal on another charge. See *People v. McCoy*, 207 Ill. 2d 352, 356-57 (2003) (trial judges are presumed to know the law and may exercise lenity in what they perceive as the interests of justice).

¶ 19                                    III. CONCLUSION

¶ 20 The judgment of the circuit court of Du Page County is affirmed.

¶ 21 Affirmed.