**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230299-U

Order filed July 11, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0299 Circuit No. 16-CF-86 |
| | ) | |
| BLAIQUE P. MORGAN, | ) ) | Honorable Vincent F. Cornelius, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Hettel and Albrecht concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm, concluding (1) defendant's *Miranda* waiver was valid, and (2) the evidence was sufficient to support defendant's conviction based on accountability.

¶ 2     Defendant, Blaique P. Morgan, appeals his conviction for first degree murder, contending it should be reversed because (1) he did not validly waive his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)) and (2) the evidence was insufficient to prove he was legally accountable for the actions of his codefendant. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4        A grand jury indicted defendant on two counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2016)). Count I alleged defendant and his brother, Amari Morgan, fatally struck Robert Bielec, a person over 60 years old, with the intent to kill or do great bodily harm. Count II alleged defendant and Amari fatally struck Bielec knowing the act created a strong probability of death or great bodily harm.

¶ 5        The case proceeded to a bench trial on October 26, 2022. The evidence showed that at approximately 11 p.m. on January 7, 2016, Bielec was found dead in his driveway near his vehicle. The driver's side door of his vehicle was open and Bielec had keys in his hand. A sheathed knife was attached to his belt. Bielec had extensive injuries to his head, including multiple skull fractures, acute brain hemorrhaging, bruising, and lacerations. Bielec's cause of death was determined to be the result of blunt force trauma from an assault. Before discovering Bielec's body and calling 911, Bielec's girlfriend heard a loud thump and a single unknown male's voice coming from the driveway. No weapon was recovered from the scene. Three pink Post-It notes with blue stains were found nearby, two of which read, "You reep [*sic*] what you sow."

¶ 6        Defendant and Amari lived with their mother in the house next door to Bielec. During a search of defendant and Amari's shared bedroom, the police found pink Post-It notes with blue stains that were consistent with the notes from Bielec's driveway. The police also found two pieces of duct tape on the window next to the front door covering two holes that were consistent with bullet holes.

¶ 7        Detectives Robert Austin and Jeff Grozik interviewed defendant on January 8, 2016. The interview was video recorded. The State presented a redacted version of the interview at trial. At the start of the interview, Austin told defendant the interview was being recorded. The detectives

were seated several feet across from defendant and both were dressed in plain clothing. Austin read defendant his *Miranda* rights from a paper form, noting he was advising defendant of his rights because he was in a police station. The form was on the table in full view of defendant, who appeared to be following along while Austin pointed to the text with a pen as he read it aloud. After he finished reading the form, Austin passed it to defendant and stated, "You need to sign here that I read you those rights." Defendant signed the form. Austin then asked defendant if he knew why he was there.

¶ 8 Defendant told the detectives someone had been killed on his street but claimed he did not know who it was. He stated that at the time of the incident, he was at a friend's house, where he learned police had blocked off his street. Defendant explained someone had fired gunshots at his house the week before, almost hitting his mother. Defendant did not know the identity of the shooter but stated "some guys around the corner" wrongly believed he and Amari had robbed them. Defendant commented that Bielec was acting creepy after the shooting and yelling outside at night. Bielec would also talk to the "guys around the corner."

¶ 9 The detectives told defendant they did not believe he did not know who had been killed. After informing defendant Bielec was dead, the detectives told him Bielec's girlfriend had witnessed the murder. The detectives opined Bielec had been "terrorizing" defendant's family and had likely shot at defendant's house. The detectives suggested defendant went to Bielec's house to confront him and had acted in self-defense when the situation escalated, noting Bielec had a gun. Defendant admitted he went to talk to Bielec the night before but claimed Bielec was acting crazy and had a gun. After Bielec pushed and grabbed him, defendant "blacked out." Defendant said he pushed Bielec in response to a lewd comment Bielec made about defendant's sister. When the detectives said Bielec had been struck with a hard object, defendant told them he hit Bielec in

3

the head with a pipe because he believed Bielec was going to shoot him. Defendant continued to hit Bielec when he fought back.

¶ 10     The detectives told defendant they knew Amari had been with him at the scene and the police had recovered their shoes. The detectives accused defendant of lying and suggested the brothers intentionally killed Bielec. Defendant explained they saw Bielec arrive home and decided to talk to him. Amari had a short temper, and defendant warned him not to do anything stupid. Defendant told Amari if Bielec got "out of line, *** the last resort would be to fight him." Defendant insisted they went to Bielec's house empty-handed. When they tried to speak to Bielec, he began ranting and made an obscene remark about their sister. Amari pushed Bielec, and Bielec pushed Amari back. Bielec appeared to be reaching for a weapon, so defendant grabbed Bielec and restrained him. Amari hit Bielec twice with a bat defendant claimed came from Bielec's house. Defendant and Amari then fled because they were scared. Defendant directed his girlfriend to dispose of the shoes he and Amari were wearing. Defendant did not know what Amari did with the bat. Defendant said the Post-It notes found at the scene belonged to Amari and had been placed there before the incident. In response to the detectives' revelation that Bielec was not armed with a gun, defendant claimed Bielec may have tried to bluff by holding his hand in his pocket to make it appear as though he had a gun.

¶ 11     Bianca Rodriguez, defendant's girlfriend at the time of the incident, testified in exchange for use immunity. On the evening of January 7, 2016, defendant called her while she was at work and told her to pick him up from his friend's house. Defendant instructed Rodriguez to bring him a pair of shoes. When Rodriguez arrived, defendant and Amari were taking bags of trash to the dumpster. Defendant entered her car and told her he had killed Bielec. After dropping Amari off at his grandfather's house, Rodriguez drove to her apartment with defendant and parked in the

4

driveway. Defendant was laughing and repeated he had killed his neighbor. Defendant exited the vehicle and threw the shoes that he and Amari were wearing when Rodriguez picked them up into an outdoor garbage can. Rodriguez then drove back to where she had taken Amari earlier and dropped off defendant.

¶ 12    On cross-examination, Rodriguez admitted she initially denied knowing anything about Bielec's death when questioned by detectives. She agreed to tell the truth when the detectives informed her defendant had confessed and she could be charged with concealment of a homicide if she refused to cooperate. Rodriguez told police defendant and Amari went next door to talk with Bielec. Although she could not recall most of the other statements she made to the police, Rodriguez agreed what she said in the recorded interview would have been accurate. After a portion of the interview was played in court, Rodriguez acknowledged she did not tell the police defendant said he had killed Bielec. Rodriguez also had not disclosed defendant's statement that he had killed Bielec when she spoke with an investigator with the public defender's office on October 4, 2022. Rodriguez confirmed she was given immunity when the State contacted her on October 20, 2022.

¶ 13    In her recorded interview with police in 2016, Rodriguez said defendant told her Bielec had been killed. According to Rodriguez, defendant and Amari believed Bielec had shot at their house because Bielec was the only person outside when the shooting occurred. Defendant and Amari went to talk to Bielec, but Amari had a bad temper and swung a bat at Bielec when the confrontation escalated.

¶ 14    Forensic testing was performed on the two pairs of shoes defendant discarded in the garbage can outside Rodriguez's apartment. The results showed DNA collected from presumptive bloodstains on the outside of both pairs of shoes matched Bielec's DNA profile. DNA found inside

one pair of shoes matched defendant. Amari could not be excluded as a contributor of the major DNA profile found inside the other pair of shoes.

¶ 15    The trial court found defendant guilty of both counts of first degree murder under the theory of accountability. In its ruling, the court considered the accountability factors set forth in *People v. Taylor*, 164 Ill. 2d 131, 141 (1995) and *People v. Turner*, 375 Ill. App. 3d 1101, 1104 (2007). The court concluded the following relevant factors for determining accountability were present: (1) defendant went to Bielec's property late at night, unannounced and accompanied by his hot-tempered brother with knowledge of an ongoing conflict; (2) defendant fled the scene; (3) defendant failed to report the crime; (4) defendant maintained a close affiliation with Amari afterward; and (5) defendant disposed of evidence. Acknowledging that the above factors were not exhaustive, the court found defendant's efforts to conceal evidence and his changing narrative of the events demonstrated guilty knowledge. The court further noted when Bielec pushed back after Amari shoved him, defendant intervened by restraining Bielec rather than restraining his brother to stop the altercation.

¶ 16    Defendant moved for judgment notwithstanding the verdict or, in the alternative, a new trial. He did not challenge the validity of his *Miranda* waiver. The court denied the motion.

¶ 17    Defendant's presentence investigation report indicated he was 19 years old at the time of the offense. Defendant was a high school graduate and had no history of cognitive impairment or mental illness. Defendant had a prior misdemeanor conviction for battery. The court merged the counts and sentenced defendant to 27 years' imprisonment. This appeal followed.

¶ 18                                            II. ANALYSIS

¶ 19                                          A. *Miranda* Waiver

¶ 20　　　　On appeal, defendant first challenges the validity of his *Miranda* waiver. Defendant acknowledges he has forfeited the issue by failing to raise it in the trial court. He requests review under the plain error doctrine or a finding that counsel was ineffective for failing to raise this issue in a motion to suppress. When addressing either plain error or ineffective assistance of counsel, we first consider whether any error occurred. *People v. Gilker*, 2023 IL App (4th) 220914, ¶ 110.

¶ 21　　　　An individual subject to custodial interrogation by law enforcement must be warned before being questioned "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444. Once *Miranda* warnings have been provided, "[t]he defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.* Although a defendant must have at least a basic understanding of what those rights encompass and minimally what a waiver will entail for it to be made knowingly and intelligently, he need not understand the far-reaching legal and strategic effects. *People v. Braggs*, 209 Ill. 2d 492, 515 (2003). The determination of whether a *Miranda* waiver is knowing and intelligent is based on the particular facts and circumstances of the case, including the background, experience, and conduct of the accused. *People v. Tuson*, 2016 IL App (3d) 130861, ¶ 22. "[A]n express written or oral statement by the accused of his desire to waive the right to remain silent or the right to counsel is not required for a valid waiver, although it is considered strong proof of waiver." *People v. Watson*, 315 Ill. App. 3d 866, 877 (2000).

¶ 22　　　　It is undisputed that defendant's interview with detectives was a custodial interrogation. Defendant was properly advised of his *Miranda* rights, and he signed a waiver before being questioned. Defendant contends his waiver was invalid because he did not read it and was tricked

7

into signing it immediately by Austin's comment that he "need[ed]" to sign the form. We are not persuaded.

¶ 23    Defendant's recorded interview shows Austin read defendant his *Miranda* rights directly from the form that defendant signed. The form was in full view of defendant the entire time, and defendant appeared to follow along as Austin pointed to the text with a pen while reading it aloud. Austin's statement that defendant "need[ed]" to sign the form was made casually as he passed it to defendant. At no time did Austin tell defendant he was not permitted to read the form, and Austin made no promises, threats, or demands. See *People v. Bowman*, 335 Ill. App. 3d 1142, 1153 (2002) (waiver invalidated by trickery involves affirmative acts of fraud or deceit). Once the form was given to him, defendant had the opportunity to read it but chose not to.

¶ 24    Moreover, defendant's passing implication that the form may not have contained any language acknowledging he understood his rights and agreed to waive them is wholly unsupported by the record, which does not contain the signed waiver. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984) (defendant has the burden to present a sufficiently complete record on appeal, and "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the [defendant]"); *People v. Johnson*, 183 Ill. 2d 176, 190 (1998). Additionally, defendant was a 19-year-old high school graduate with no indicia of cognitive impairment and had experience with law enforcement due to his prior criminal conviction. See *People v. Richardson*, 2015 IL App (1st) 113075, ¶ 18 (factors to consider when determining validity of *Miranda* waiver include defendant's age, evidence of mental deficiency, and prior experience with criminal law). In light of the totality of the circumstances, defendant's waiver was demonstrably voluntary, knowing, and intelligent. See *People v. Bernasco*, 185 Ill. App. 3d 480, 493 (1989) (the court may properly conclude *Miranda* rights have been waived if the totality of the circumstances reveal an uncoerced

8

choice and requisite level of comprehension). Because no error occurred, "neither the doctrine of plain error nor a theory of ineffective assistance affords any relief from [defendant's] forfeiture." *People v. Jones*, 2020 IL App (4th) 190909, ¶ 179.

¶ 25                                B. Sufficiency of the Evidence

¶ 26        Defendant also contends the evidence was insufficient to prove he was legally accountable for first degree murder. Challenges to the sufficiency of the evidence require the reviewing court to view the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Conway*, 2023 IL 127670, ¶ 16. "A criminal conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.*

¶ 27        A defendant can be held legally accountable for the conduct of another when "either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of the offense." 720 ILCS 5/5-2(c) (West 2016). Accountability can be established if defendant shared the criminal intent of the principal, or if there was a common criminal design or purpose. *Taylor*, 164 Ill. 2d at 140-41. Knowledge of and participation in the criminal scheme may establish accountability even when there is no evidence a defendant directly participated in the criminal act itself. *People v. Perez*, 189 Ill. 2d 254, 267 (2000). Words of agreement are not required; a common design can be inferred from the circumstances surrounding the perpetration of the crime. *Taylor*, 164 Ill. 2d at 141. Factors that may be considered in determining legal accountability based on common design include (1) defendant's presence during the commission of the crime without disapproval or opposition; (2) defendant's flight from the

9

scene; (3) defendant's failure to report the crime; (4) defendant's continued association with the perpetrator after the criminal act; (5) whether defendant shared in the proceeds of the criminal act; and (6) defendant's efforts to destroy or conceal evidence. *People v. Jackson*, 2020 IL App (4th) 170036, ¶ 47.

¶ 28    In this case, the trial court provided a detailed analysis of the above factors and found all but one were present. Defendant was present at the scene when Bielec was killed. Defendant and Amari went to Bielec's house unannounced and late at night. Before going to confront Bielec, defendant told Amari they would fight Bielec as a "last resort" if he acted "out of line," knowing Amari had a bad temper and there was an outstanding conflict. Once an altercation ensued between Amari and Bielec, defendant aided in the assault by restraining Bielec. Defendant fled from the scene after Bielec had been killed, did not report the crime, and continued to associate with Amari afterward. Defendant attempted to conceal evidence and obstruct the investigation by throwing away the shoes they were wearing and giving detectives multiple versions of the events. When viewed in the light most favorable to the State, the evidence was sufficient to prove defendant was legally accountable for Amari's conduct.

¶ 29                                III. CONCLUSION

¶ 30    For the reasons stated, we affirm the judgment of the circuit court of Will County.

¶ 31    Affirmed.