2026 IL App (1st) 242566-U

No. 1-24-2566

Order filed June 12, 2026

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 8801 |
| | ) | |
| ELIJAH DAVIS, | ) | Honorable |
| | ) | Peggy Chiampas, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Wilson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for aggravated battery where a rational trier of fact could find that the State disproved beyond a reasonable doubt that he acted in self-defense.

¶ 2    Following a jury trial, defendant Elijah Davis was found guilty of aggravated battery and sentenced to 12 months' probation. On appeal, defendant argues that the State failed to disprove beyond a reasonable doubt that he acted in self-defense. We affirm.

¶ 3    Defendant was charged by indictment with, in relevant part, two counts of aggravated battery alleging that he knowingly battered Jorge Garcia, a merchant, who detained defendant for an alleged retail theft (720 ILCS 5/12-3.05(d)(9) (West 2022)) and that he knowingly battered Garcia in a public place of accommodation (720 ILCS 5/12-3.05(c) (West 2022)).

¶ 4    At trial, Jasmine Carter, an employee at EZ Pawn in Chicago, Illinois, testified that on June 7, 2022, at around 4:20 p.m., defendant, whom she identified in court, entered the shop to sell items including a computer and a soundbar. Defendant, assisted by another employee, signed a contract and accepted $200 for the items. Subsequently, Carter noticed that defendant "didn't believe *** he was getting the right amount for his *** merchandise." Garcia, the lead pawnbroker, told the employee assisting defendant to "redo" the contract. Defendant, however, did not return the $200 and tried to leave the store with the items. Garcia grabbed the cord to the soundbar to retrieve it. Defendant then jumped over the counter to the employee-side, exchanged words with Garcia, and a "fight [broke] out." Another customer separated the pair, and Carter called the police and locked the front door to the shop.

¶ 5    After the fight, defendant, still in possession of the items and $200, attempted to leave the shop. Garcia stopped him, and "another fight broke out." The same customer separated the pair again, and the police arrived around five minutes later. After the fight, Garcia had a "bruised" face, swollen eye, and swollen and bloody lip.

¶ 6    On cross-examination, Carter testified that the contract for the items had not yet been cancelled when the fights occurred. Garcia struck defendant first during the first fight. On redirect examination, Carter testified that defendant struck Garcia first during the second fight.

¶ 7   Surveillance videos from inside the shop were published at trial, are included in the record on appeal, and have been viewed by this court. In the first video, an individual, whom Carter testified was defendant, signs a contract and is handed money, which he places in a wallet that he puts in his back pocket. About 10 minutes later, defendant converses with another individual, whom Carter testified was Garcia. Garcia then walks away. A few minutes later, defendant packs items into a backpack and retrieves the soundbar. Garcia grabs the cord to the soundbar, and defendant jumps over the counter onto the employee-side and bends down to retrieve the cord. Garcia pushes and strikes defendant, and they fight. Defendant eventually grabs Garcia in a headlock until another customer separates them.

¶ 8   In the second video, Garcia blocks defendant from leaving the shop by standing between defendant and the door. Defendant strikes Garcia in the face, and they fight. Defendant strikes Garcia a few more times, drags him from the door, and stomps on his face, neck, and chest, holding him on the ground as he flails and attempts to rise. Another customer pulls defendant off Garcia. Police arrive a few minutes later.

¶ 9   Chicago police sergeant Pulia testified that he arrived at the shop at around 5 p.m. and saw defendant, whom Pulia identified in court, and Garcia inside the shop.[1] Pulia observed lacerations to Garcia's lip and right eye. Photographs of Garcia's injuries were published at trial and are included in the record on appeal. In the photographs, which this court has viewed, Garcia's lips are swollen and bloody, and there is a mark near his right eye.

¶ 10   The parties stipulated that Garcia passed away prior to trial, and his death was not a result of defendant's actions. A death certificate for Garcia was admitted into evidence.

---

[1] Sergeant Pulia's first name does not appear in the record.

¶ 11     Defendant testified that he went to EZ Pawn to sell a soundbar, subwoofer, laptop, and scooter. While negotiating the sale, defendant and the employee assisting him disagreed over the price of the items. Garcia told the employee to void the transaction, and both Garcia and the employee walked away from defendant. Defendant decided to "call their bluff," placed his laptop in his backpack, and pretended to leave the shop. Garcia "snatched" the cord to the soundbar and "threw" it onto the floor behind the counter. Defendant climbed over the counter to retrieve the cord.

¶ 12     Once defendant retrieved the cord from the ground, Garcia punched him in the face "several times." Defendant stated that his "military training kicked in," and he defended himself as he felt that his life was in danger. Defendant "defended" himself for "one to two minutes" and then stopped as he did not want to harm Garcia.

¶ 13     Defendant attempted to leave the shop because he was "afraid" and "disoriented" from the "attack." Garcia stood in front of the door, preventing defendant from leaving. Defendant "removed" Garcia from his position in front of the door but was unable to leave due to the door being locked. Defendant, still fearing for his life, waited for police to arrive.

¶ 14     On cross-examination, defendant testified that he possessed the $200 when he attempted to leave the shop with his items. On redirect examination, he testified that his military training taught him to "neutralize" threats and he was "supposed to have hurt [Garcia] more than [he] did." When defendant was attempting to leave the shop, he was not thinking about the $200 and was just thinking of getting "out of there."

¶ 15     Defense counsel entered into evidence a certified copy of Garcia's conviction for domestic battery.

¶ 16    The jury was instructed, in relevant part, on self-defense and the justified use of force by an initial aggressor.

¶ 17    The jury found defendant not guilty of aggravated battery against a merchant and guilty of aggravated battery in a public place of accommodation. Defendant's motion for a new trial was denied, and he was sentenced to 12 months' probation.

¶ 18    On appeal, defendant argues that the State failed to disprove beyond a reasonable doubt that he acted in self-defense.

¶ 19    In order to prove defendant guilty of aggravated battery in a public place of accommodation, the State needed to prove that he "knowingly *** cause[d] bodily harm" to Garcia "on or about *** a public place of accommodation." See 720 ILCS 5/12-3(a)(1), 12-3.05(c) (West 2022)). Here, defendant does not contest any element of the offense. Rather, he argues that the State failed to disprove that he acted in self-defense after Garcia struck him first.

¶ 20    "Self-defense is an affirmative defense, and once a defendant raises it, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense[.]" *People v. Lee*, 213 Ill. 2d 218, 224 (2004). To raise self-defense, a defendant must present "some evidence" establishing that "(1) force [wa]s threatened against [him]; (2) [he was] *** not the aggressor; (3) the danger of harm was imminent; (4) the threatened force was unlawful; (5) he actually and subjectively believed a danger existed which required the use of the force applied; and (6) his beliefs were objectively reasonable." *People v. Vesey*, 2026 IL 130919, ¶ 42. If the State negates any element, a defendant's self-defense claim fails. *People v. Gray*, 2017 IL 120958, ¶ 50.

¶ 21   "In deciding a claim of self-defense, it is the function of the jury to assess the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *Id.* ¶ 51. The jury also resolves conflicts or inconsistencies in the evidence. *Id.* Therefore, we will not retry the defendant or substitute our judgment for that of the trier of fact on those issues. *People v. Conway*, 2023 IL 127670, ¶ 16. Our standard of review is "whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that the defendant did not act in self-defense." *Gray*, 2017 IL 120958, ¶ 51. A conviction will not be set aside unless "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 22   The evidence at trial established that defendant and Garcia engaged in two fights. As depicted in the footage, during the first fight, defendant jumped over the counter, Garcia struck him, they fought, and defendant placed Garcia in a headlock until another customer separated the pair. During the second fight, defendant struck Garcia first and repeatedly, dragged him from the door, and held him on the ground by stomping on his face, neck, and chest as he struggled to get up before defendant was pulled off Garcia by the other customer.

¶ 23   Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that defendant did not act in self-defense because the evidence negated multiple elements of his self-defense claim. Specifically, during the second fight defendant was the aggressor, he was not in imminent danger of harm and, even if he feared imminent harm, his belief that danger existed requiring the use of the force applied was not objectively reasonable.

¶ 24    Although defendant testified that he feared for his life and only tried to "neutralize" the supposed threat, the trier of fact was not required to accept as true defendant's self-defense claim and instead was obliged to consider the testimony of the other witnesses, the probability or improbability of defendant's testimony, and the surrounding circumstances. *People v. Rodriguez*, 336 Ill. App. 3d 1, 15 (2002). Here, the jury heard defendant's testimony and saw the video evidence depicting the fights, and we will not second-guess its conclusions regarding the evidence. See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009).

¶ 25    Even accepting that Garcia initiated physical contact by striking defendant during the first fight, and notwithstanding that defendant jumped over the counter, defendant became the aggressor when he used excessive force against Garcia during the second fight. As noted, the video evidence showed that defendant struck Garcia first and repeatedly, dragged Garcia away from the door, and stomped on Garcia's face, neck, and chest while Garcia was on the ground before defendant was pulled off Garcia by another customer. See *People v. Guja*, 2016 IL App (1st) 140046, ¶ 52 ("[I]f the defendant responds to a confrontation with such excessive force that he is no longer acting in self-defense but in retaliation, the excessive use of force renders the defendant the aggressor, even if the other person involved actually commenced the confrontation.").

¶ 26    Moreover, the jury could have reasonably concluded that Garcia posed no threat to defendant while on the ground and therefore, defendant's use of force was not justified. See *People v. Dickey*, 2011 IL App (3d) 100397, ¶ 15 (finding the defendant did not act in self-defense when, after the victim started the fight, the defendant tackled the victim, hit and kicked the victim while the victim was on the ground, and had to be pulled off the victim). Thus, a rational trier of fact could have found that the State negated multiple elements of defendant's self-defense claim, such

that defendant's actions were not justified and he did not act in self-defense. See *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (all reasonable inferences are viewed in the light most favorable to the prosecution). Accordingly, the evidence was not "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Bradford*, 2016 IL 118674, ¶ 12.

¶ 27     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 28     Affirmed.